# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IMAGE PROCESSING TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-cv-03867-SJF-ETB |
| | ) | |
| CANON INC.; | ) | ECF Case |
| CANON U.S.A., INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Response of Defendants Canon Inc. and Canon U.S.A., Inc. to Plaintiff Image Processing Technologies LLC's Objections to the Report and Recommendation of Magistrate Judge E. Thomas Boyle Entered December 13, 2012 (D.I. 183)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

I.   PRELIMINARY STATEMENT ........................................................... 1

II.  ARGUMENTS ................................................................................... 3

    A.   Judge Boyle Correctly Found that Canon's Motion for Partial
    Summary Judgment of Non-infringement Should Be Granted ............................ 3

        1.   Claim Construction ................................................................. 5

        2.   Canon's Cameras Cannot Perform DefectDetect.c Without
        Modification ........................................................................... 8

    B.   Judge Boyle Properly Recommended Denial of Plaintiff's Motions
    to  Strike the Declaration of Dr. Thomas Binford, and Portions of
    the Declarations of Mr. Patrick Pirim and Dr. Eli Saber ....................... 11

        1.   Dr. Binford's Declaration Is Proper and Based on Facts ........................... 12

        2.   Mr. Pirim's Declaration Is Proper and Based on Facts ............................. 14

        3.   Dr. Saber's Declarations Are Proper ....................................... 16

III. CONCLUSION ................................................................................. 18

i

## TABLE OF AUTHORITIES

**Cases**

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F. 3d 1448, 1454 (Fed. Cir.1998) ............................................................... 5

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
  287 F.3d 1108, 1118-19 (Fed. Cir. 2002) ..................................................... 9, 10

*Harkabi v. SanDisk Corp.*,
  No. 08 Civ. 8203, 2012 WL 2574717, at *5 (S.D.N.Y. June 20,
  2012) .............................................................................................. 16, 17, 18

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
  540 F.3d 1337 (Fed. Cir. 2008) ...................................................................... 15

*In re Omeprazole Patent Litig.*,
  No. M–21–81, 2002 WL 287785, *8 (S.D.N.Y. Feb. 27, 2002) .................................... 17

*Prasad v. MML Investors Services, Inc.*,
  No. 04 Civ. 380, 2004 WL 1151735 (S.D.N.Y. May 24, 2004)...................................... 13

*Silicon Graphics, Inc. v. ATI Technologies, Inc.*,
  607 F.3d 784, 794-95 (Fed. Cir. 2010) ............................................................ 10

*Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, 2006 WL
  44053, *2 (S.D.N.Y. Jan. 9, 2006)................................................................. 17

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  246 F. 3d 1316, 1330 (Fed Cir. 2001)........................................................... 7, 11

*Verizon Services Corp. v. Cox Fibernet Va., Inc.*,
  602 F.3d 1325 (Fed. Cir. 2010)...................................................................... 15

*Voice Techs. Group, Inc. v. VMC Sys., Inc.*,
  164 F.3d 605, 615-616 (Fed. Cir. 1999) ..................................................... 14, 15

*Wechsler v. Hunt Health Sys. Ltd.*,
  381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003)........................................................ 18

**Statutes**

Fed. R. Civ. P. 72(b)(2).................................................................................. 1

**Rules**

Rule 26(a)(2)(B)........................................................................................... 16

I.      **PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. 72(b)(2), Defendants Canon Inc. and Canon U.S.A. Inc. (collectively "Canon") hereby respond to Plaintiff Image Processing Technologies LLC's Objections (D.I. 183) to the Report and Recommendation of Magistrate Judge E. Thomas Boyle entered December 13, 2012 (D.I. 180, the "Report").  Canon requests that this Court overrule Plaintiff's objections and adopt Judge Boyle's recommendations (i) to grant Canon's motion for partial summary judgment of non-infringement of claims 1, 2 and 18 of U.S. Patent No. 6,969,293 (the '293 patent) and (ii) to deny Plaintiff's motions to strike portions of the declarations of Mr. Pirim (the inventor of the'293 patent) and Dr. Saber (Canon's retained technical expert) and to strike the declaration of Dr. Binford (who worked with Mr. Pirim to develop an application using the patented technology).

Judge Boyle recommended granting Canon's motion for summary judgment of non-infringement by accused Canon cameras that do not execute DefectDetect.c firmware. DefectDetect.c is one of four features in Canon's cameras that are accused of infringement.  The accused cameras, as imported and sold by Canon, cannot execute the DefectDetect.c firmware without being connected to another device (such as a personal computer) that sends to the camera commands to execute that firmware.  Since the accused cameras cannot, by themselves, execute the DefectDetect.c firmware, the accused cameras are not "configured" to perform certain functions, as required by the asserted patent claims.

Underlying Judge Boyle's recommendation is an implicit determination that the term "configured" in the patent claims requires a device to be actually capable of performing the recited functions.  If a device cannot perform a function, then it is not "configured" to perform that function.  Since the accused cameras, standing alone, are incapable of executing the DefectDetect.c firmware, they are also incapable of performing the claimed functions.

1

Therefore, they are not "configured" to perform the claimed functions and cannot infringe the claims. Accordingly, Judge Boyle applied the proper construction of the term "configured" in the claims and correctly concluded, based on the undisputed facts, that the accused cameras imported and sold by Canon cannot, by themselves, infringe the properly-construed claims.[1]

Also underlying Judge Boyle's recommendation is a correct determination that there is no genuine dispute of fact that the accused Canon cameras, standing alone, cannot execute the DefectDetect.c firmware. Image Processing argues that it might be possible to cause a Canon camera to execute the DefectDetect.c firmware without connecting it to a computer by using "hack" software provided by a third party. What Image Processing hypothesizes, however, entails *modifying* a Canon camera by inserting a memory card containing the third party software. The cameras imported and sold by Canon do not contain that third party software, and a device does not infringe a patent merely because it could be modified to infringe, as the Report correctly noted. Hence, it is irrelevant whether a Canon camera can execute the DefectDetect.c firmware after being modified to use third party software.

Moreover, Image Processing's argument concerning the third party "hack" software is entirely speculative. Dr. Zavadsky, Image Processing's retained technical expert, merely opines that someone *might* be able to execute the DefectDetect.c firmware in a Canon camera using the hack software. Although he had the hack software in his possession and studied it, Dr. Zavadsky did not successfully use the hack software to execute the DefectDetect.c firmware. Hence, Judge Boyle properly rejected Image Processing's theoretical argument that a consumer might use hack software to access and execute the DefectDetect.c firmware by

---

[1] Canon also denies that its cameras infringe the asserted patent claims even when the camera is connected to another device and the DefectDetect.c firmware is executed (for example, at a Canon service facility). That, however, is not the subject of Canon's motion.

modifying the camera in an unauthorized manner.  That argument is both irrelevant and speculative, and it does not create a genuine issue of material fact.

Judge Boyle also recommended denying Plaintiff's motions to strike portions of the declarations of Mr. Pirim and Dr. Saber and to strike the declaration of Dr. Binford.  Judge Boyle correctly found that the declarations of Mr. Pirim and Dr. Binford contain relevant factual testimony, based on their direct personal knowledge of the patented technology and the prior art GVPP-6 processor, and do not contain expert testimony.  He also correctly found that any delay by Canon in identifying Dr. Binford as a witness was due to Plaintiff's own failure to disclose him as a knowledgeable witness in its initial disclosures.  Regarding Dr. Saber's declarations, Judge Boyle correctly found that the portions of those declarations at issue did not improperly go beyond the scope of Dr. Saber's expert reports.

## II.   ARGUMENTS

### A.   Judge Boyle Correctly Found that Canon's Motion for Partial Summary Judgment of Non-infringement Should Be Granted

The only issue before the Court on non-infringement is whether the asserted claims of the '293 patent are capable of being infringed by the importation and sale of cameras containing dormant DefectDetect.c firmware that cannot be activated without connecting the camera to an external device.  The DefectDetect.c firmware is not simply awaiting a command from a consumer to activate it; the camera by itself is incapable of initiating execution of the firmware.  The firmware can only be executed by connecting the camera to another device that sends the camera special commands (which are secret and proprietary to Canon) to execute the DefectDetect.c firmware.  Yet, Plaintiff contends that the mere *presence* in the accused cameras of a dormant, inoperable and inaccessible firmware routine infringes claim 1, 2 and 18 of the '293 patent.  Judge Boyle rejected that argument and correctly determined that infringement can

3

occur (if at all) only when the DefectDetect.c firmware is actually executed, because the camera

is only "configured" to perform the accused functions when the firmware is executed.  Therefore,

there is no act of infringement by merely selling cameras that contain the inoperable firmware

but are incapable of executing the firmware without modifying the camera.

As described in the moving papers and in Judge Boyle's Report and

Recommendation, the DefectDetect.c firmware is used to detect defective pixels in the image

sensor of a camera.  This is a calibration step that is performed for Canon cameras at its

manufacturing facilities, all of which are located outside of the United States.  Typically, the

DefectDetect.c firmware is executed only once for a camera – at the time of manufacture.  The

DefectDetect.c firmware is executed by connecting the camera to an external device, such as a

personal computer, which sends the camera a proprietary alphanumeric command to execute the

otherwise dormant DefectDetect.c firmware.  The camera is incapable of generating the

execution command on its own.  Once the external device is removed, the DefectDetect.c

firmware can no longer be executed.  Therefore, it cannot be accessed by a camera consumer.  (A

consumer also would not know the proprietary command.)

The DefectDetect.c firmware may also be used to detect defective pixels at a

Canon authorized service facility in the U.S. for a very small percentage of cameras, when

certain types of repairs are made, but only when the camera is connected to an external device

and sent the proprietary execution command by Canon affiliated personnel. [2]  All of these facts

---

[2] As noted above, Canon is not moving for summary judgment of non-infringement for that small percentage of cameras for which the DefectDetect.c firmware is actually activated by the external device in the United States.  Canon vigorously disputes that the DefectDetect.c firmware, when executed, infringes any claim of the'293 patent, but Canon will address that issue at trial.

are undisputed.  Without the external device, the DefectDetect.c firmware is dormant and cannot be accessed and/or executed.

There are no material facts in dispute on this issue.  The issue is a legal one that is ripe for summary judgment, *i.e.*, whether the asserted patent claims require, for infringement to be found, that a camera be capable of actually performing the accused functionality when the camera is sold to consumers.  As Judge Boyle found, they do.

## 1.     **Claim Construction**

Claim construction is a pure issue of law with no underlying questions of fact. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F. 3d 1448, 1454 (Fed. Cir.1998).  As a pure issue of law, resolution of claim construction is never a barrier to summary judgment.

Plaintiff is wrong that Judge Boyle did not properly consider the claim terms in his Report.  Before concluding that Canon's cameras which do not execute the DefectDetect.c firmware cannot infringe the asserted patent claims, he first discusses the correct legal standard and notes that "the claims in the patent must be properly construed" as the first step to the infringement analysis.  Report at 19.  Judge Boyle then considers the parties' respective positions on whether the patent claims require the camera to be capable of executing the DefectDetect.c firmware: "Image Processing vigorously disputes whether infringement is limited to 'use'" (Report at 21); "According to Canon, because the cameras by themselves cannot execute the DefectDetect.c firmware, the cameras alone are incapable of infringing the '293 Patent" (Report at 23).  Judge Boyle then concludes that DefectDetect.c must be capable of being executed to infringe the claims, not merely be present on the camera in an inoperable state.  "Since Canon's cameras are incapable of executing the DefectDetect.c firmware without modification, it appears they are similarly incapable of infringing the '293 patent."  (Report at 23-24).  So, it is clear that

5

he considered the parties competing claim interpretations and correctly found, as a matter of law, that the claims require a camera to be capable of actually performing the claimed functions in order for infringement to be found.  That is, the mere presence of inactive DefectDetect.c firmware, which cannot be accessed or executed by a camera, cannot be the basis for infringement.

While Judge Boyle did not explicitly go through every argument the parties set forth relating to the claim construction, his determination is the correct one as a matter of law. Claim 1, for example, requires:

> *A visual perception processor for automatically detecting an event occurring in a multidimensional space (i, j) evolving over time with respect to at least one digitized parameter in the form of a digital signal on a data bus, said digital signal being in the form of a succession $a_{ij}T$ of binary numbers associated with synchronization signals enabling to define a given instant (T) of the multidimensional space and the position (i, j) in this space, the visual perception processor comprising:*
>
> > *the data bus;*
> >
> > *a control unit;*
> >
> > *a time coincidences bus **carrying** at least a time coincidence signal; and*
> >
> > *at least two histogram calculation units for the treatment of the at least one parameter, the histogram calculation units **being configured** to form a histogram representative of the parameter as a function of a validation signal and to determine by classification a binary classification signal resulting from a comparison of the parameter and a selection criterion C, wherein the classification signal **is sent** to the time coincidences bus, and wherein the validation signal is produced from time coincidences signals from the time coincidence bus so that the calculation of the histogram depends on the classification signals carried by the time coincidence bus.*

*('293 Patent, 26:*34-59) (emphasis added).

The plain and ordinary meaning of "configured," and the other terms indicating that the functions must actually be performed, such as the present tense terms "is sent" and "carrying," require that a device actually be capable of performing the accused infringing

6

functions.[3]  In claim 1, for example, a device cannot infringe unless it has at least two histogram

calculation units that are "configured to form a histogram" *i.e.*, actually capable of forming a

histogram.  As imported and sold by Canon, the accused cameras by themselves cannot execute

the DefectDetect.c firmware, and when the DefectDetect.c firmware is not executed, the accused

cameras cannot form a histogram as required by claim 1.  Plaintiff's own expert, Dr. Agouris,

asserted that the accused cameras calculate a histogram only when the CPU <u>executes</u> the

DefectDefect.c firmware.  (*See* Rule 26(A)(2)(B) Expert Report of Dr. Peggy Agouris Regarding

U.S. Patent No. 6,959,293, p. 21 (Ex. E to Canon's Motion for Summary Judgment of Non-

infringement of '293 Patent by DefectDetect.c Firmware that is not Executed)).  Therefore, there

is no dispute of fact that the accused Canon cameras are not capable of forming a histogram (and

therefore cannot infringe) when there is no execution of the DefectDetect.c firmware.  As

discussed further below, there is no genuine dispute that the DefectDetect.c firmware is dormant

and inaccessible in the cameras when imported and sold by Canon, and there is no way that a

camera, standing alone, can access and execute the DefectDetect.c firmware.  Therefore, the

importation and sale of those cameras cannot infringe the patent claims.  *See Telemac Cellular*

*Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed Cir. 2001) (finding no infringement

because the accused functionality that was present in the telephone system was restricted from

being accessed by the user).

        Plaintiff is simply mistaken when it suggests that the fact that the claims are

drawn to an apparatus as opposed to a method has any bearing on the outcome of this analysis.

(IPT Br. at 2-3, 5).  The claim language requires that an accused product be **configured to**

perform the infringing functions.  The fact that the asserted claims are apparatus claims does not

---

[3] All of the asserted claims of the '293 patent have similar limitations requiring that the device be
*configured* to perform specified functions, in the present tense.

7

allow Plaintiff to circumvent the requirement imposed by this claim language that, in order to satisfy the claim limitations and infringe the claim, a product must actually be capable of performing the claimed functions.  Since, as Judge Boyle found, the accused Canon cameras standing alone are not capable of performing the claimed functions, as a matter of law those cameras cannot infringe any of the asserted claims and the importation and/or sale of those cameras does not constitute infringement.

**2.    Canon's Cameras Cannot Perform
DefectDetect.c Without Modification**

Judge Boyle properly found that the accused cameras, on their own, cannot infringe the '293 patent with respect to DefectDetect.c because they are incapable of executing that firmware.  It is undisputed that the cameras cannot execute the DefectDetect.c firmware unless they receive a secret alphanumeric execution command.  It is undisputed that the execution command cannot be entered using the camera itself as sold by Canon (and Canon does not provide the command to consumers, in any event).  Instead, the execution command can only be provided to the camera by combining it with another device, *i.e.*, by modifying the camera. Typically, this is only when the camera is connected to a personal computer when the camera is manufactured, or in rare circumstances, when it is repaired at a Canon authorized service center. "As sold by Canon, a compact digital camera itself has no way of generating these specific alphanumeric commands." (Report at 19) (internal citations omitted).  "Image Processing does not appear to dispute that the DefectDetect.c firmware cannot be executed by camera customers operating their cameras in the intended manner."  (*Id.* at 23).

Judge Boyle correctly applied the law that no infringement can be found merely because a device is capable of being *modified* to infringe.  Even assuming, *arguendo*, that the patent claims would be infringed when a Canon camera is connected to a computer at a Canon

8

service facility to execute the DefectDetect.c firmware, the importation and/or sale of a camera *per se* does not satisfy the claim limitations and does not constitute infringement.

Judge Boyle properly rejects Plaintiff's speculative argument that a camera operator could modify an accused camera to allow the DefectDetect.c firmware to be executed. Specifically, Plaintiff argues that third-party "hack" software called the "Canon Hack Development Kit" or CHDK might be used to initiate execution of the DefectDetect.c firmware. This "hack" software apparently was developed by camera enthusiasts in an attempt evade Canon's security provisions on its firmware. Plaintiff's argument, however, centers on a *modified* Canon camera, that is, one in which the third-party hack software has been added to it (for example, by inserting a memory card containing the hack software into the camera). Regardless of whether a Canon camera is modified by combining it with a personal computer that can send the execution command or by combining it with the third-party hack software, any infringement by the resulting combination would be infringement by a *modified* camera, not by a camera as it is imported and sold by Canon. Thus, it is irrelevant whether a Canon camera can be modified to infringe using third-party hack software (which is neither provided by nor promoted by Canon), because the unmodified cameras imported and sold by Canon cannot infringe.

The cases Plaintiff cites are inapplicable to the present facts. In *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir. 2002), the accused software was fully functional. As the Court in that case explained, "the software underlying a computer program that presents a user with the ability to select among a number of different options must be written in such a way as to enable the computer to carry out the function defined by those options when they are selected by the user." *Fantasy Sports*, 287 F.3d at 1118. That is

9

indisputably not the case here – a user cannot access or execute the DefectDetect.c firmware using an unmodified camera.  That firmware can only be executed by connecting the camera to an external device that provides an execution command (and, in any event, Canon does not provide the execution command to camera owners).  Similarly, *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 607 F.3d 784, 794-95 (Fed. Cir. 2010) involved software that was fully functional, and only had to be loaded onto the operating system in order to infringe the claims. *Silicon Graphics,* 607 F.3d at 794-95.  In that case, the software was *meant* to be installed on a computer (it was provided for that purpose), so that the user could perform the claimed invention.  The Court in that case noted that **"**the product [infringed because it was] designed in such a way as to enable a user of that [product] to utilize the function . . . without having to modify [the product].**'"** *Id.* at 794 (quoting *Fantasy Sports* at 1118) (changes in original) (emphasis added).  In contrast, it is undisputed in this case that the accused Canon cameras are not designed to allow the camera users to access or execute the DefectDetect.c firmware, and they could do so only by modifying the product.

       In addition to being irrelevant to whether an unmodified camera infringes, Plaintiff's argument regarding the CHDK hack software is also speculative.  Plaintiff relies on a declaration from its expert Dr. Zavadsky, who speculates that if a camera were modified with the hack software then a user theoretically *might* be able to access and execute the DefectDetect.c firmware. (Zavadsky Decl. 23-27.)  However, Dr. Zavadsky did not even state that this can actually be done.  Instead, after what appears to be extensive testing of this approach, Dr. Zavadsky was only able to run some other defect detection software that is included in CHDK and is not provided by Canon.  (Zavadsky Decl. 20, 39; Zavadsky Supp. Exp. Rep. ¶ 41.)  Hence, there is no evidence that the hack software can actually be used to modify a camera to function in an infringing manner.  In rejecting Plaintiff's argument based on the hack software, Judge Boyle

10

properly relied on *Telemac* for the proposition that a "device [] capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Telemac*, 247 F.3d at 1330.  Canon further submits that Plaintiff's argument cannot create a genuine issue of fact because it is mere speculation and not based on evidence.

**B.    Judge Boyle Properly Recommended Denial of Plaintiff's Motions to Strike the Declaration of Dr. Thomas Binford, and Portions of the <u>Declarations of Mr. Patrick Pirim and Dr. Eli Saber</u>**

The Court should reject Plaintiff's objections and adopt Judge Boyle's recommendation to deny the motions to strike the declaration of Dr. Thomas Binford and portions of the declarations of Mr. Patrick Pirim and Dr. Eli Saber.  (IPT Br. at 10.)  (*See* D.I. 108, 110, 111, 112 and 158) (IPT's Motions to Strike).

Mr. Pirim and Dr. Binford each submitted a declaration setting forth detailed factual information about the features contained in the GVPP-6 processor, based on their direct personal knowledge of the GVPP-6.  Mr. Pirim (who is also the inventor of the patent-in-suit) developed the GVPP-6, and Dr. Binford worked with Mr. Pirim to develop a specific application for the GVPP-6 (namely, detecting drowsiness in drivers).  The GVPP-6 was publicly demonstrated in the United States more than one year before the filing of the '293 patent, and the declarations of both Mr. Pirim and Dr. Binford establish that the GVPP-6 contained every limitation recited in the asserted '293 patent claims.  Importantly, Mr. Pirim and Dr. Binford were the two people that worked extensively with the GVPP-6 technology, and therefore are the only people who know in detail what features the GVPP-6 contained.  Image Processing attempts to characterize the declarations of Mr. Pirim and Dr. Binford as expert testimony, but Judge Boyle correctly found that those declarations present factual testimony based on their own

11

knowledge of the GVPP-6 that they worked with for many years.  They are not offering opinion testimony, only fact-based knowledge about what they know.

Image Processing attempts to characterize portions of Dr. Saber's declaration as presenting new opinions, but Judge Boyle correctly determined that Dr. Saber's declaration provides expert opinion on the same topics as disclosed in his expert report.  Although he elaborates on his opinions in response to the expert reports and declarations provided by Plaintiff's experts, Judge Boyle correctly found that Dr. Saber's declaration is properly within the scope of opinions disclosed in his expert report.

### 1.   Dr. Binford's Declaration Is Proper and Based on Facts

Regarding Dr. Binford, Plaintiff argues that Dr. Binford's testimony is expert opinion testimony because he was "asked" by counsel to review the PCT publication and to consider the '293 patent claims with respect to the PCT publication and the GVPP-6, and because he was reimbursed for his lost time.  (IPT Br. at 14). Plaintiff also argues that Dr. Binford's declaration is "conclusory" and that he was not timely identified as a witness. (*Id.* at 14-15 & n.12).

As Judge Boyle correctly found, Dr. Binford is a named inventor of the PCT publication and has personal knowledge of the GVPP-6, and his declaration presents factual information based on his personal knowledge. "Due to his involvement with the Pirim PCT Publication and the GVPP-6, … Dr. Binford's declaration is being offered solely as to factual matters within his personal knowledge." (Report at 28).  The mere fact that Dr. Binford reviewed the PCT publication and considered the '293 patent claims with respect to the PCT publication and the GVPP-6 does not transform his factual testimony into expert testimony.  His declaration provides testimony about his factual knowledge of the GVPP-6 as it relates to the claims of the

12

'293 patent. When his declaration refers to limitations in the claims, it is simply to provide a reference point to indicate which aspects of the GVPP-6 are relevant and need to be addressed by him. Moreover, he certainly understood the terminology used in the '293 patent because he worked extensively on the technology with Mr. Pirim, assisting in the development of an application for the GVPP-6 and being named as a co-inventor with Mr. Pirim on the PCT Publication. (Binford Decl., ¶¶ 3, 9.)

Canon's reimbursement of Dr. Binford for his lost time was proper and is irrelevant to any issue here. *See Prasad v. MML Investors Services, Inc.*, No. 04 Civ. 380, 2004 WL 1151735 (S.D.N.Y. May 24, 2004). Dr. Binford's declaration also is not conclusory. While he provided summary statements regarding his opinions (Binford Decl., ¶¶ 12, 13), he also addressed the '293 patent claims on a limitation-by-limitation basis in comparison with the GVPP-6, based on his personal knowledge of that device. (Binford Decl., ¶¶ 14-32). His declaration references each claim limitation to provide reference points that focus his declaration on the relevant aspects of the prior art about which he has firsthand factual information.[4]

Finally, Plaintiff's assertion that Dr. Binford's testimony was untimely is meritless. As Judge Boyle found, "[g]iven…Image Processing's knowledge of Dr.Binford's involvement in the facts giving rise to this action, as well as its failure to disclose his identity, it is disingenuous for Image Processing to now claim they are being "sandbagged" by the submission of the Binford Declaration." (Report at 28). Plaintiff knew about Dr. Binford's involvement with the GVPP-6, but failed to disclose Dr. Binford and his intimate knowledge of the prior art in Plaintiff's own Rule 26 Initial Disclosures. Canon learned the full extent of Dr.

---

[4] Image Processing's attacks on Dr. Binford's declaration are incongruous, in that Image Processing (wrongly) asserts that the declaration is conclusory and yet also criticizes it for mentioning each claim limitation as a reference point.

13

Binford's involvement with the GVPP-6 only from depositions of Plaintiff's witnesses who were offered for deposition *after* the close of fact deposition and after the parties exchanged preliminary witness lists. *See* Canon's Response to Image Processing's Motion to Strike (D.I. 114) at p. 2. After that, Canon had to track down Dr. Binford in India, where he now lives. So any delay in the disclosure of Dr. Binford is of Plaintiff's own making. [5]

### 2.      Mr. Pirim's Declaration Is Proper and Based on Facts

Regarding Mr. Pirim's declaration, he is the inventor of the patent-in-suit, the co-inventor of the Pirim PCT publication, the creator of the GVPP-6, and the person who demonstrated the GVPP-6 in the United States in 1997. Judge Boyle correctly determined that "Mr. Pirim's declarations present factual matters well within his personal knowledge" because he is "the sole inventor of the '293 Patent, as well as the developer of the GVPP-6." (Report at 25).

As with Dr. Binford, Plaintiff alleges that Mr. Pirim's declaration sets forth improper expert testimony about the patent claims and the GVPP-6 device. (IPT Br. at 15-18). But, as with Dr. Binford, Mr. Pirim's declaration simply sets forth factual information about the PCT publication and the GVPP-6 device, based on his personal knowledge. The law is clear that the inventor may provide testimony explaining the claimed invention and its development. *Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615-616 (Fed. Cir. 1999). "An inventor is a

---

[5] In a desperate attempt to taint Dr. Binford's *sworn* statement (which is corroborated by Mr. Pirim's *sworn* statement), in footnote 12 Plaintiff makes unsupported insinuations about not having a chance to see if Dr. Binford (and by implication the attorney's representing Canon) are lying about how he is being paid for his time. Plaintiff knew about Dr. Binford's involvement before it even filed this lawsuit and, as Judge Boyle found, any delay in bringing Dr. Binford into this litigation is Plaintiff's fault. Plaintiff has no grounds to complain about not being able take discovery from Dr. Binford.

14

competent witness to **explain the invention** and what was intended to be conveyed by the specification and **covered by the claims**." *Id.* at 615.

Plaintiff misunderstands and/or misapplies *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008) and *Verizon Services Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325 (Fed. Cir. 2010). *Howmedica* stands only for the proposition that "inventor testimony as to the inventor's subjective intent [in claiming] is irrelevant to claim construction." *Howmedica*, 540 F.3d at 1347. Mr. Pirim's declaration, however, is not directed at claim construction but rather addresses factual matters concerning the features contained in the GVPP-6. In *Verizon*, on the other hand, the district court did not abuse its discretion in precluding the inventors from providing expert opinion testimony on validity, where that testimony was not based on personal knowledge. The district court, however, properly permitted the inventors, like here, to provide "factual testimony that did not require expert testimony." *Verizon*, 602 F.3d at 1339-40. Since Mr. Pirim's factual testimony is based on his personal knowledge, it is proper.

Plaintiff disingenuously asserts that Mr. Pirim is unfamiliar with the '293 patent claims because someone else drafted them and they are different from the claims that Mr. Pirim drafted for a foreign counterpart application. Mr. Pirim, however, is the inventor of the '293 patent and is intimately familiar with the technology, and he certainly understands the terminology used in the patent claims. Moreover, like Dr. Binford, Mr. Pirim simply refers to the claim limitations as a reference point for focusing his discussion of the features contained in the GVPP-6, and he is not offering expert testimony about the '293 patent claims.

Plaintiff also attempts to taint Mr. Pirim's declaration by insinuating that he is biased due to an ownership dispute concerning the '293 patent. First, the argument is

15

unsupported (and offensive) attorney argument.  More importantly, such an argument would not preclude the admissibility of the declaration in any event.  Moreover, Plaintiff's insinuation is contradicted by the fact that Plaintiff actually retained Mr. Pirim as a consultant (under a consulting agreement) before bringing this suit (Pirim Decl. ¶ 8), and the fact that Dr. Binford's sworn declaration entirely corroborates Mr. Pirim's sworn statements and testimony.

### 3.       Dr. Saber's Declarations Are Proper

Plaintiff made three separate motions to strike portions of Dr. Saber's declarations, alleging that the declarations go beyond the scope of his expert reports.  Judge Boyle correctly found that Dr. Saber's declaration testimony "does not present new opinion, but rather merely provides further explanation of the opinions contained in his expert report as well as his opinions in response to the positions taken by Image Processing's expert [Dr. Agouris]." (Report at 26-27).

The portions of Dr. Saber's declaration at issue concern the same opinions regarding invalidity, based on the same prior art, as disclosed in his expert report.  They do not present new opinions or introduce new prior art.  Instead, as in *Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203, 2012 WL 2574717, at *5 (S.D.N.Y. June 20, 2012), Dr. Saber is "[a]t most . . . provid[ing] evidentiary details for his opinions."

As Judge Boyle correctly noted, Rule 26(a)(2)(B) does not limit an expert's testimony to simply reading his report but rather contemplates that the expert will explain and elaborate on his report.  (Report at 27, citing *Harkabi*.)  Dr. Saber's declaration elaborates on his opinions and explains them in response to positions taken by Image Processing and its experts. While Dr. Saber's declaration more specifically addresses dependent claims 2 and 22 of the '293 patent, that discussion mostly incorporates the previous testimony about the independent claims

16

from which those claims depend (claims 1 and 18, respectively).  For claim 22, Dr. Saber

considers one additional statement from Mr. Pirim that was not previously available, because

only on the very last day of fact discovery, after Mr. Pirim had already been deposed in this case,

did Plaintiff decide to assert claim 22.  As a result, Mr. Pirim was not asked about claim 22 at his

deposition, and he first addressed that claim in his declaration.  Dr. Saber, having not had that

information previously, saw it for the first time in Mr. Pirim's declaration.  Dr. Saber's opinion

in his declaration merely elaborates on his previous opinion concerning the GVPP-6 device in

view of that previously unavailable testimony.

       This situation is clearly distinguishable from the cases that Plaintiff cites in its

Objections.  In *Harkabi* (citing *In re Omeprazole Patent Litig.*, No. M–21–81, 2002 WL

287785, *8 (S.D.N.Y. Feb. 27, 2002)), the expert failed to disclose his reliance on particular

documents during discovery.  There is no such situation here, since Dr. Saber's expert reports

disclosed his opinions concerning both the Pirim PCT Publication and the GVPP-6.  Further, in

*Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, 2006 WL 44053, *2 (S.D.N.Y.

Jan. 9, 2006), the expert offered an entirely new opinion, in contrast to the situation here, where

the challenged testimony is simply "evidentiary detail for the opinions expressed in [the expert]

report".  (*See Harkabi*, 2012 WL 2574717, at *5.)  Accordingly, as Judge Boyle correctly found,

Dr. Saber's declarations do not go beyond the scope of his expert report, and Image Processing's

Motions to Strike were properly denied.

       Finally, even if Canon had not demonstrated that Dr. Saber's declarations were

merely proper elaboration on his prior opinions, exclusion would be a harsh sanction.  As Judge

Boyle recognized, "[p]recluding testimony of an expert, even when there has not been strict

compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective

17

of doing substantial justice to litigants." *Harkabi* at \*4 (*quoting Wechsler v. Hunt Health Sys. Ltd.*, 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003) (internal quotation marks and citation omitted in original).

**III.     CONCLUSION**

   For the foregoing reasons, the Court should overrule Plaintiff's objections to Judge Boyle's Report and Recommendation and should adopt Judge Boyle's findings and recommendations on these issues.  The Court should grant partial summary judgment of non-infringement in Canon's favor regarding DefectDetect.c firmware that is not executed and should deny Plaintiff's motions to strike.

Dated:  January 24, 2013:       __/s/ Brian L. Klock_____
              Nicholas M. Cannella
              Peter D. Shapiro
              Kristina M. Mahoney Hanson
              FITZPATRICK, CELLA, HARPER &
              SCINTO
              1290 Avenue of the Americas
              New York, New York 10104-3800
              Phone:  (212) 218-2100
              Fax:     (212) 218-2200
              ncannella@fchs.com
              pshapiro@fchs.com
              kmahoney@fchs.com

              Brian L. Klock
              Joshua D. Schneider
              FITZPATRICK, CELLA, HARPER &
              SCINTO
              975 F Street, NW
              Suite 400
              Washington, DC 20004
              Phone:  (202) 530-1010
              Fax:     (202) 530-1055
              bklock@fchs.com
              jschneider@fchs.com

*Attorneys for Defendants*
*Canon Inc. and Canon U.S.A., Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 24, 2013, RESPONSE OF DEFENDANTS CANON

INC. AND CANON U.S.A., INC. TO PLAINTIFF IMAGE PROCESSING TECHNOLOGIES

LLC'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE

JUDGE E. THOMAS BOYLE ENTERED DECEMBER 13, 2012 (D.I. 183) was filed

electronically with the Clerk of the Court using CM/ECF which will send notification of such

filing to all registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

/s/  Joshua D. Schneider
Joshua D. Schneider

20